IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COUNTESS CARY,<br><br>                Plaintiff,<br><br>      v.<br><br>NORTHEAST ILLINOIS REGIONAL<br>COMMUTER RAILROAD CORP,<br>d/b/a METRA RAIL,<br><br>                Defendant. | No. 19 C 3014<br><br>Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM ORDER**

Plaintiff's Motion to Compel the Production of Electronically Stored Information [ECF No. 95] ("Motion") is granted in large part for the reasons set forth in her briefs filed in support of that Motion [ECF Nos. 96, 113]. The Motion is denied, however, to the extent Plaintiff asks the Court to order Defendant to produce her entire email box (or a large portion of it) to her rather than run search terms on the electronically stored information ("ESI") in Plaintiff's email box in the same way as Defendant will do for other custodians. The Motion is taken under advisement with respect to the time frame for certain of Plaintiff's proposed ESI searches and set for further hearing on that issue on March 19, 2021, at 10:00 a.m., with a status report to be filed by March 16, 2021. The Court's reasoning for its rulings is explained more fully below.

**Custodians.** The Court agrees with Plaintiff that the parties should continue to meet and confer about many of the issues framed by her Motion including, without limitation, to identify the individual custodians whose ESI should be searched for relevant and responsive information. The Court disagrees that Defendant's proposal to impose an arbitrary limit of five or seven

custodians is appropriate or proportional to the needs of this case. If the parties cannot agree on the custodians whose ESI will be searched consistent with this Memorandum Order within 21 days from the date of this Order, then the Court orders that the 27 individuals identified at page 8 of Plaintiff's Reply Brief [ECF No. 113], including Plaintiff as one of those individuals, will be the custodians from whom Defendant will collect ESI and run search terms. If the parties need more time to meet and confer about this issue, then they should file a motion to extend the date the Court has set and explain why it is reasonable for the Court to do so.

Defendant provides no convincing rationale for limiting the number of custodians to relatively few people given the number of people both parties have identified as potentially having relevant information in their initial disclosures. In an effort to show burden, Defendant says it ran test searches for two potential custodians that together yielded a total of 18,000 hits that would have to be reviewed for possible production (11,000 hits for one person and 7,000 for the other). But that, frankly, tells the Court very little about the ultimate burden on Defendant from executing whatever ESI protocol the parties eventually agree upon for all custodians. It also is not clear that the parties have agreed on search terms to be run across designated custodians and, if they have not yet done so, then those discussions should proceed cooperatively as well. The parties may be able to lessen the burden of various ESI searches by fine tuning search requests that result in a large number of initial hits but yield much fewer relevant and responsive documents upon further review, or by phasing their queries of particular data bases so they can learn more about the efficacy of certain searches before running others. Again, the key is to continue to talk about these issues and not to take absolute line-in-the-sand positions without a solid basis for doing so and, even then, to continue to evaluate an absolute position. *See* Standing Order Relating to the Discovery of Electronically Stored Information at Principle 1.02 (Cooperation) ("An attorney's

zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions"),www.ilnd.uscourts.gov/_assets/_documents/_forms/_judges/gilbert/discoverystorinfo .pdf.

For the avoidance of doubt, the Court's Order with respect to custodians is without prejudice to the parties agreeing to different custodians or to a different total number of custodians. It also does not prevent Plaintiff in the future from asking the Court to include in the final list more than 27 custodians if she can show that is proportional to the needs of the case or Defendant from asking the Court to narrow the list if there is good reason to do so after the parties have finished the meet and confer process. But on the current record, the Court is of the view that the 27 people identified by Plaintiff in her Reply Brief constitute a logical and reasonable list of custodians given the reasons Plaintiff has put forth for including those people. This is less than the universe of 41 or even 38 people that Defendant says Plaintiff proposed at different times during the parties' meet and confer process (the Court notes Plaintiff says she proposed a large number of potential custodians, not necessarily that all be included in the final search list) and much more appropriate than the arbitrary five or seven people that Defendant proposed during that process. If Defendant wants to narrow this list, it needs to provide sufficient information to Plaintiff so she will be able to negotiate intelligently. *See* Federal Rule of Civil Procedure 26 Adv. Cmt. Notes, 2015 Amendment ("Framing intelligent requests for electronically stored information . . . may require detailed information about another party's information systems and other information resources.).

The Court is including Plaintiff in the list of custodians rather than ordering Defendant to produce Plaintiff's entire email box as she first requested or even her email box for the years 2013

to 2018 as Plaintiff apparently now is requesting. *See* Plaintiff's Opening Brief [ECF No. 96], at 13 ("Metra should immediately produce Plaintiff's entire email box for the years of 2013 to 2018."). A blanket request for all of Plaintiff's emails during even a five-year time period, let alone a longer period, is on its face overbroad because it very likely will include emails and documents that are not relevant to the claims and defenses in this case. The cases Defendant cites, though from other jurisdictions, make this point as a matter of common sense in denying requests like Plaintiff is making here. *See, e.g., Russell v. Kiewit Corp.*, 2019 WL 2357525, at *3 (D. Kan. June 4, 2019).

The authority Plaintiff cites for the proposition that the Court should order Defendant to produce to her the entire contents of her email box is weak for that purpose. The Court has reviewed the cases Plaintiff cites for that proposition, and it agrees with Defendant that those cases do not solidly support the position Plaintiff is advancing here. Rather, those cases, without any discussion, simply mention that the plaintiff's email box will be produced to the plaintiff by the defendant largely, it seems, without any opposition by the defendant in those cases. *See Widmar v. Sun Chem. Corp.*, 2012 WL 1378657, at *8 (N.D. Ill. Apr. 19, 2012); *Saliga v. Chemtura Corp.*, 2013 WL 6182227, at *3 (D. Conn. Nov. 25, 2013). Notably, Plaintiff does not really respond to the cases Defendant cites other than to say that they are from other jurisdictions. That is true but not dispositive given that they are persuasive authority to this Court.

Finally, Defendant's suggestion that its offer to augment its ESI production in this case by handing over the entire ESI production it made in a different discrimination case that purportedly is similar to Plaintiff's case should cause her to reduce her demand for information in this case does not hold much water. This is a different case, and Plaintiff is entitled to discovery relevant to the claims and defenses in her case rather than to those in another case. So, Defendant's offer to

4

produce the ESI it produced in the *Almon* case does not obviate its obligation to search for and produce relevant ESI in this case. *See, e.g., In re Broiler Chicken Antitrust Litig.*, 2018 WL 3586183 (N.D. Ill. July 26, 2018).

In addition, Defendant's tender of the invoices it paid to execute the ESI protocol in the *Almon* case does not show it would suffer an undue burden in this case if it is required to execute whatever ESI protocol the parties ultimately agree to here. The Court has no information about the efficiency of the ESI production in the *Almon* case or the circumstances under which it was done. Further, Plaintiff notes that she is asking Defendant to run less than half the search requests it ran in the *Almon* case, and she says her searches are more targeted and tailored to specific custodians or groups of custodians than were the searches in the *Almon* case. Defendant has not presented any real information about the hardship it says it will suffer if it is required to produce the information Plaintiff is requesting in this case, and therefore, it has not met its burden of showing why what Plaintiff is requesting is not proportional to the needs of this case.

**Time Frame.** Defendant says the relevant time frame for production of documents in this case should be between 2015 and 2018 because that is the statute of limitations period for Plaintiff's claims given that Plaintiff left Defendant's employ in 2018. Plaintiff agrees to limit some of her proposed ESI search requests to a January 1, 2015 start date, and even to January 1, 2016 or 2017 in some instances. But she proposes that five of her proposed 17 search groups use an inception date of January 1, 2010, that searches in another group incept on January 1, 2011, and that most of her searches be run through the present date. Plaintiff says going back to 2010 will allow her to discover relevant and proportional information to show "that she was a strong employee and Metra's baseline practices before [her alleged harasser] arrived." Plaintiff's Opening Brief [ECF No. 96], at 12-13.

5

As an initial matter, the Court rejects Defendant's broad argument that no search incepting earlier than 2015 ever could be appropriate in a case like this. *See, e.g., Kellogg v. Ball State University*, 984 F.3d 525, 529-30 (7th Cir. 2021) (recognizing that "time-barred acts [are allowed] as support for a timely claim") (citations omitted). Plaintiff argues that as a long-term employee of Defendant, documents going back to a date before 2015 could contain relevant information because, among other reasons, Plaintiff began working for Defendant in 1998. Still, Plaintiff alleges her problems began when one of her alleged harassers was hired in 2015. *See* Amended Complaint [ECF No. 94], at ¶¶ 7-9. So, for the most part, the relevant conduct in this case took place in and after 2015. Plaintiff says documents created prior to 2015 could be relevant to her job performance or Defendant's "baseline practices" (the Court, frankly, is not sure what the quoted language means), but her proposed search terms going back to 2010 or 2011 seem very broad, both as to time period and substance, if they are meant to focus on the topics Plaintiff references, assuming the Court is reading them correctly.

The Court is not convinced that going back to 2010 as opposed to a more recent year, yet still before her alleged harasser arrived in 2015, is proportional to the needs of the case. The Court also is not convinced that Plaintiff's proposed search terms are calibrated to yield only the kind of information she says is relevant for the time period before 2015. Further, it is not clear to the Court why most of Plaintiff's searches need to be run through the present as opposed to through the date the lawsuit was filed, or possibly an earlier date in some instances, and why that discovery is proportional to the needs of the case. In addition, in the Court's view, a key component of this discussion is Plaintiff's proposed search terms, and the Court cannot tell from the parties' briefs or the letters they exchanged before Plaintiff filed her Motion how much the parties have discussed those search terms, whether test searches have been run on particular data sources, the extent to

which the parties have engaged in any process designed to fine tune the search terms that ultimately will be run, or the like.

Unfortunately, the parties present the Court with only a binary choice – a relevant time period going back for some purposes to 2010 and continuing to the present, or a three-year period running only from 2015 through 2018. Neither proposal, in the Court's view, appears to be proportional to the needs of the case for the reasons discussed above. Therefore, Plaintiff's Motion is taken under advisement in this respect. The Court encourages the parties to revisit their positions in light of the Court's views expressed in this Memorandum Order. The question of the proper time frame for the parties' ESI searches and production is set for further hearing on March 19, 2021, at 10:00 a.m. The Court expects the parties to have met and conferred about the time frame issue before that hearing, and they shall file a short status report on or before March 16, 2021, with a brief summary of where they then stand on the time frame issue. The parties' status report also shall include a brief summary of where they stand on the custodians whose ESI will be searched as part of an ESI protocol.

**Data Sources.** The Court agrees with Plaintiff that Defendant must disclose data sources that may contain relevant ESI so the parties, together, can come up with an intelligent and workable ESI protocol. The Court disagrees with Defendant that all it needs to do is identify its work email as a relevant data source. Consistent with the general theme of this Memorandum Order and the thrust of Plaintiff's Motion, the key here is cooperation in identifying relevant data sources, custodians whose data should be searched, and appropriate search terms and how those terms are to be applied to the ESI in question. As a practical matter, that means Defendant must provide Plaintiff with information necessary for her to calibrate her discovery requests so she can seek relevant information that is proportional to the needs of the case, including information about data

7

sources other than email. *See* Federal Rule of Civil Procedure 26 Adv. Cmt. Notes, 2015 Amendment ("Framing intelligent requests for electronically stored information . . . may require detailed information about another party's information systems and other information resources."). *See also Bilek v. National Congress of Employers, Inc.*, 2021 WL 25543, at *6 (N.D. Ill. Jan. 4, 2021); *The Case for Cooperation*, 10 Sedona Conf. J. 339, 344 (2009) ("Indeed, because knowledge of the producing party's data is usually asymmetrical, it is possible that refusing to "aid" opposing counsel in designing an appropriate search protocol that the party holding the data knows will produce responsive documents could be tantamount to concealing relevant evidence.").

It may be that, at the end of a more fulsome meet and confer process, Defendant's email data will be the primary or even the only data source that needs to be searched for relevant ESI in this case. But Defendant's refusal even to engage in any discussion about what other data sources may exist has frustrated Plaintiff's ability to do her own due diligence on this issue. That must stop if the parties are to arrive at a reasonable and proportional ESI protocol. In fact, Defendant's refusal to engage in this process very likely is driving up the cost of defense in this case as well as Plaintiff's cost of prosecuting the case, as is illustrated by the motion practice necessary to get to this point in this case and the long letters counsel wrote to each other for months before Plaintiff's Motion was filed. In the Court's view, if Defendant wants to keep the cost of this litigation down, then it should be working more cooperatively with Plaintiff toward that end, and vice versa. The Court is confident that neither side wants to spend more time, effort, or money on discovery in this case than is absolutely necessary. If the parties and their lawyers cannot work together in this area, then the Court may have no choice but to appoint a special master with expertise in the area of electronic discovery and to order one or both parties to pay or share the cost of that exercise if it is deemed necessary to move discovery forward in this case. *See, e.g., In re Broiler Chicken*

*Antitrust Litigation*, No. 16-cv-8637, ECF No. 491 (N.D. Ill. Oct. 2, 2017) (Order Appointing Special Master).

**Cost of Producing ESI.** Plaintiff proposes that Defendant pay the costs associated with producing its own ESI. Defendant proposes the parties split those costs. Generally, in federal litigation, each party bears its own cost of producing documents or ESI to the other unless there is some reason to vary from that presumption, such as when a party requests information that is inaccessible or the discovery being sought is not proportional to the needs of the case. *See, e.g., U.S. Equal Employment Opportunity Comm'n v. Dolgencorp, LLC*, 2014 WL 3734361, at *3 (N.D. Ill. July 29, 2014) ("Cost shifting for production of electronically stored information may be appropriate when the data is inaccessible, such as when it is recorded on backup tapes."); *Grant v. Homier Distrib. Co.*, 2007 WL 2446753, at *4 (N.D. Ind. Aug. 24, 2007) ("[W]hen the request violates the Fed.R.Civ.P. 26(b)(2)(C) proportionality test, the Court may condition discovery on the requesting party's payment of costs for production."). *See also* Rule 26(c) Adv. Cmt. Notes, 2015 Amendment ("Courts and parties should continue to assume that a responding party ordinarily bears the costs of responding.").

Defendant has not presented any information that would cause the Court to shift some of its cost for producing ESI to Plaintiff given the presumption that each party bears its own costs in that regard. Defendants has not provided cogent or reliable information about what it would cost to run whatever ESI protocol the parties end up agreeing to here or whether any of the information it is being asked to produce is inaccessible for some reason. Although Defendant insists that Plaintiff is seeking information that is not proportional to the needs of this case, the Court has rejected some of those arguments above. It also is not yet clear where the parties will land on all aspects of an eventual ESI protocol in this case so it is premature to say whether Plaintiff should

9

be required to pay for some of what she is seeking from Defendant over its objections. There simply is no basis in the record for the Court to order Plaintiff to pay half of Defendant's costs for producing its own ESI in this case at this time. Accordingly, the Court will not require Plaintiff to do so. If there is a credible, supportable reason for the Court to do so in the future based on solid information and numbers, the Court can, if necessary, revisit the issue.

Finally, the Court also disagrees with Defendant that it can use the costs it incurred for executing an ESI protocol in the *Almon* case as a proxy for or even an indication of the burden it will have to shoulder in this case to do what Plaintiff proposes it should do. As discussed above in the section about Custodians in this Memorandum Order, Plaintiff says she is asking Defendant to do less here than what it had to do in the *Almon* case. In addition, the Court does not know anything about how Defendant executed the ESI protocol in the *Almon* case, why it cost Defendant as much as it did, and why that is a good proxy for the costs that will be incurred in this case.

For all these reasons, Plaintiff's Motion to Compel the Production of Electronically Stored Information [ECF No. 95] is granted in part, denied in part, and set for further hearing in part on March 19, 2021, at 10:00 a.m., with a status report to be filed by March 16, 2021, all as discussed in this Memorandum Order.

It is so ordered.

                                                                                      Jeffrey T. Gilbert
                                                                                      United States Magistrate Judge

Dated: February 22, 2021