UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COUNTESS CARY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:19-CV-03014 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| NORTHEAST ILLINOIS REGIONAL | ) | |
| COMMUTER RAILROAD CORPORATION | ) | |
| d/b/a METRA RAIL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Countess Cary worked for the Chicago-area suburban railroad company known as Metra for about 20 years before resigning in the face of what she describes as a campaign of discrimination, harassment, and retaliation. When she was still working at Metra, she retained outside counsel to advocate for her with her employer. Eventually, that same counsel filed this action alleging violations of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et. seq.*; the Illinois Civil Rights Act of 2003, 740 ILCS 23/1 *et. seq.*, the Illinois Whistleblower Act, 740 ILCS 174 *et. seq.*; and Illinois common law.[1] R. 1, Compl.[2] Following a decision on Metra's motion to dismiss, R. 19, Cary's surviving claims were for disability discrimination under the Rehabilitation Act, disparate treatment under the Illinois Civil Rights Act, retaliation under the Illinois

---

[1]This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims—including the counter-claim—under 28 U.S.C. § 1367.

[2]Citations to the record are noted as "R." followed by the docket number.

Whistleblower Act, and intentional infliction of emotional distress. R. 52, Mem. Opinion and Order. Since that ruling, Cary has exhausted her administrative remedies for several additional claims based on the same events, and filed an Amended Complaint including those claims. R. 92, Mot. for Leave to File Am. Compl; R. 94, Am. Compl.

Most importantly for purposes of this Opinion, Metra in turn has filed a counterclaim against Cary for breach of her fiduciary duty, claiming that she improperly forwarded confidential documents and information to herself and her outside counsel, Stowell and Friedman. R. 135, First Am. Answer and Counterclaim. Cary has moved to dismiss the counterclaim. R. 143. For the reasons discussed in this Opinion, Cary's motion is denied, for now.

## I. Background

For purposes of this motion, the Court accepts as true the allegations in the Counterclaim. *Erickson v. Pardus*, 551 U.S. 89, 95 (2007). Countess Cary worked for Metra from June 1998 until October 2018. R. 135 at 23, Counterclaim ¶ 2. Throughout her employment, she was a licensed Illinois attorney subject to the Illinois Rules of Professional Conduct. *Id.* ¶ 3. In 2009, Cary became Metra's Senior Director of EEO and Diversity Initiatives. *Id.* ¶ 4. In this role, she was responsible both for personally investigating employees' discrimination complaints and, at times, for assigning investigations of that kind to Metra EEO investigators. *Id.* ¶ 5. She needed to remain impartial and avoid conflicts of interest in her own investigations, and ensure that EEO investigators also remained impartial and avoided conflicts of interest in their

2

own investigations. *Id.* ¶¶ 6, 8–9. Cary also had to ensure that complaints were investigated thoroughly and completely. *Id.* ¶ 7.

As part of her job, Cary "was regularly entrusted with" Metra's confidential information and confidential documents. Counterclaim ¶ 11. These included personnel files, employee medical records, employee complaints of harassment and discrimination, correspondence with the legal department and executive team, internal memoranda and correspondence, and notes and correspondence related to investigations of employee complaints. *Id.* ¶ 12. Metra had a confidentiality policy prohibiting employees, including Cary, from improperly accessing, using, disclosing, removing, or duplicating confidential information and documents like those just listed. *Id.* ¶ 15. The Metra policy expressly prohibited removing, disseminating, or copying confidential documents without permission. *Id.* ¶ 16. Metra's confidentiality policy was included in the Metra Employee Handbook. *Id.* ¶ 17–18. Cary understood that she was not allowed to improperly access, transmit, or otherwise use confidential information or documents. *Id.* ¶¶ 13, 19. In fact, during her employment at Metra, Cary acknowledged her awareness of the confidentiality policy in writing. *Id.* ¶ 20. Metra alleges that Cary had a fiduciary duty to follow its confidentiality policy. *Id.* ¶ 22.

Nevertheless, beginning in 2012 and up through 2018, Metra alleges that Cary violated the confidentiality policy. Counterclaim ¶ 23. She allegedly went beyond accessing confidential information for the permitted purposes of her doing her job, and instead shared it outside Metra without authorization from her superiors. *Id.* Specifically, she forwarded confidential Metra documents and correspondence to her

3

personal email account, then shared them with her attorneys at Stowell & Friedman. *Id.* ¶¶ 24–25. She used these confidential documents to help her prepare and file this lawsuit against Metra. *Id.* ¶ 26. Metra alleges that had it known Cary was sharing confidential documents outside the workplace, in violation of the confidentiality policy and her fiduciary duty, it would have disciplined Cary, possibly to the point of firing her. *Id.* ¶ 30. Cary's salary at Metra was about $145,000 plus benefits in 2017 and 2018. *Id.* ¶ 32. Metra seeks the return of all money it paid to Cary while she was in breach of her fiduciary duty, as well as of any confidential documents still in Cary's possession, custody, and control. *Id.* ¶¶ 33–34.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. See Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

The only issue before the Court today is whether Metra has stated a claim against Cary for breach of fiduciary duty. In order to state this claim under Illinois common law, Metra must allege: "(1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the party complains." *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 433 (Ill. 2012). Cary effectively concedes that a fiduciary duty existed at the relevant times.[4] She contests, however, the other two elements: the breach of duty, and, if a breach is sufficiently alleged, that such a breach caused any injury to Metra.

### A. Breach of Fiduciary Duty

As an initial matter, the Court agrees with Cary that the only potential candidates for well-pleaded allegations on the fiduciary-duty breach claim are those

---

[4]Although Cary states, "Metra inadequately pleads the duty and breach elements," she does not develop an argument about the duty element. R. 144, Pl's. Br. at 6.

5

premised on Cary's alleged forwarding of confidential documents to herself, and sharing them with her attorney. R. 144, Pl.'s Br. at 5. In alleging that Cary shared documents outside the workplace, Metra asserts that the recipients of those documents "include, *but are not limited to*, Cary's present counsel of record, Stowell and Friedman." Counterclaim ¶ 24 (emphasis added). At this stage in the case, this is only good enough to encompass Stowell & Friedman. By Metra's own account, it learned of Cary's alleged breaches "during the course of the defense of Cary's lawsuit," presumably through discovery, which has been ongoing in this case. *Id.* ¶ 28. At this stage, if Metra had discovered that Cary disclosed information to anyone else, the Court would expect Metra to name them specifically in the Counterclaim rather than resort to the legal-speak of "including but not limited to." Metra's failure to do so means that it can only allege that Cary shared information with her counsel, and otherwise breached the confidentiality policy by forwarding materials to her personal email. So those are the two alleged breaches that the Court will consider.

Illinois common law governs the fiduciary-duty claim. "The decision of a federal court in a case in which state law supplies the rule of decision, is an exercise in predicting how the highest court of the state would decide the case if it were presented to it." *Midwest Knitting Mills, Inc. v. United States,* 950 F.2d 1295, 1298 (7th Cir.1991) (cleaned up); *see also Brooks v. Chicago Downs Ass'n,* 791 F.2d 512, 514 (7th Cir.1986) ("Because the Illinois Supreme Court has never directly confronted the issue ... we must take what they have said, what Illinois appellate courts have said, and then the decisions of other states on the same issue, in order to formulate our

6

holding."). Illinois courts do not appear to have directly addressed the question of whether forwarding confidential documents to oneself or one's attorney to help build a lawsuit is a breach of fiduciary duty—if such a case exists, neither the parties nor the Court has unearthed it. But Illinois appellate court decisions on breaches of fiduciary duty more generally shed some light on the issue.

"Corporate officers owe a fiduciary duty of loyalty to their employer not to: (1) actively exploit their positions within the corporation for their own personal benefits; or (2) hinder the ability of the corporation to conduct the business for which it was developed." *E.J. McKernan Co. v. Gregory*, 623 N.E.2d 981, 992–93 (Ill. Ct. App. 1993). For example, Illinois courts have repeatedly held that an ex-employee breaches their fiduciary duty when they use information or materials taken without permission from a previous employer to compete with that employer. *See Hill v. Names & Addresses, Inc.,* 571 N.E.2d 1085, 1091 (Ill. Ct. App. 1991) (it was a breach of fiduciary duty for an employee to take a computer disk from her prior employer and use the files on it to benefit her new employer—regardless of whether the information on the disk was confidential, since the real issue was the employer's "superior right to possession" of the materials); *Preferred Meal Systems, Inc. v. Guse*, 557 N.E.2d 506, 515 (Ill. Ct. App. 1990) (defendant who used company information to plan a rival company breached his fiduciary duty); *Unichem Corp. v. Gurtler*, 498 N.E. 2d 724, 726, 728 (Ill. Ct. App. 1986) (defendant who poached employees and clients from his former employer, and took samples of the employer's labels to use as models for his new business, was in breach of his fiduciary duty).

7

Cary contends that it can never be a breach of fiduciary duty to forward confidential documents to one's attorney, because "disclosure to one's own attorneys is the verbal equivalent of locking documents in a safe" and because employees need to be able to do so in order to see legal advice. Pl.'s Br. at 6. Nor is it a breach to forward documents to one's own personal email, according to Cary, because that is not the type of self-dealing malfeasance prohibited by Illinois case-law on breaches of fiduciary duty. *Id.* at 6–7. Metra, on the other hand, stands by its argument that its employees cannot share any confidential documents outside the workplace, and asserts that this is no restriction on an employee's right to seek counsel because the employee can still share information she or he knows. R. 149, Def.'s Resp. at 3–6. As for Cary's forwarding documents to herself, Metra characterizes this as "precisely the type of disloyal conduct adverse to Metra's interests previously found to state a claim for an employee's breach of their fiduciary duty." *Id.* at 8, citing *McLaughlin v. Chi. Transit Auth.*, 243 F. Supp. 2d 778, 779 (N.D. Ill. 2003).

Both positions are too extreme. On one end: Metra cannot be right about an absolute, blanket rule against sharing confidential records, like employment files, because Illinois law authorizes employees to access at least some of their own personnel file. So employees *must* be able to share at least some confidential documents with their own legal counsel, without breaching their fiduciary duties. Specifically, Sections 2 and 3 of the Illinois Personnel Record Review Act, 820 ILCS 40/2–3, require employers to allow employees to inspect and to obtain copies of the employee's personnel record. Given this right to obtain what would otherwise be a confidential

8

employment record, it cannot possibly be a breach of fiduciary duty to then share the record with the employee's own counsel. Not even Metra argues that the underlying *information* in the record would be non-disclosable, so what would be the point in putting the employee to a memory test in conveying that information rather than providing the record itself?

Beyond the specific Illinois Personnel Record Review Act, there might very well be lawful ways—like some other statutory right or simply in the ordinary course of her employment—through which an employee obtains access to records that are *not* simply about the employee herself. If those lawfully obtained records are evidence of the employer's violation of law, then disclosure (within limits discussed next) should not qualify as a breach of fiduciary duty, because Illinois common law is only concerned at preventing an employee's exploitation of her position for personal gain or unduly interfering with an employer's business. It is not likely that Illinois courts would deem the gathering of evidence (again, within certain limits) of an employer's law-breaking as a breach of fiduciary duty.

On the other end, however, there must be some limit to *how* an employee obtains records, *what* she takes, and *who* are the recipients of the disclosure. On "how," for example, it is one thing to ask human resources for an employee's own personnel record under the Illinois Personnel Record Review Act. It is quite another to steal a supervisor's password to hack into an employer's database server in order to view the records. On "what," for example, it is one thing to take a monthly, widely distributed listing of employee sales figures to show superior performance compared to co-

9

workers. It is quite another to take a copy of co-workers' personnel files, including private information with no bearing on a lawsuit. On "who," other than disclosing records to an employee's lawyer or to the pertinent government agency (for example, the EEOC), wider disclosure to others could also breach a fiduciary duty.

The bottom-line is that, in developing an employment-discrimination lawsuit, Illinois law would likely not punish an employee who lawfully obtains records; discloses only those records reasonably necessary to develop a lawsuit; and discloses the records only to the employee's attorneys and, later, to the pertinent government agency. An employee in those shoes—seeking to hold an employer accountable for a violation of law—cannot be said to be exploiting her position for purely personal gain or interfering with the employer's business. To prohibit an employee from sharing *any* documents, as Metra proposes, would fly in the face of Illinois common law, which views breach of fiduciary duty as involving personal gain on one side, and concrete detriment on the other. Plus, an employee has the right to hire an attorney to help her vindicate her rights, without facing retaliation by her employer. *See, e.g.*, *Connell v. Bank of Bos.*, 924 F.2d 1169, 1179 (1st Cir. 1991) ("It is self-evident that by retaining an attorney plaintiff had engaged in an activity protected under the [Age Discrimination in Employment] Act."). The right to hire an attorney is hollow without the right to reasonably share relevant information and documents related to her own victimization with that attorney.[5]

---

[5]Although Metra initially tried to claim that it was a breach of duty for Cary to share *information* with her counsel, this argument is not developed in the briefing. Def.'s Resp. at

10

Without knowing more about the confidential documents that Cary allegedly wrongfully took from Metra and shared with her attorney, the Court cannot say that she did not breach her fiduciary duty. So the counterclaim survives. But Metra would be well advised to reevaluate the factual underpinnings of the counterclaim and carefully consider whether it would survive summary judgment under the standard just articulated.

### B. Damages

If Metra can establish that Cary breached her fiduciary duty by sharing documents inappropriately with her counsel, then the Court agrees with Metra that it may be able to recover some damages. Illinois courts have allowed employers to recover compensation paid to their employees during periods in which the employees were in breach of their fiduciary duty. *See, e.g.*, *Veco Corp.,* 611 N.E.2d at 1062. But for Metra to recover Cary's *full* salary, it would need to prove that she was not properly performing her job duties. *ABC Trans Nat. Transp., Inc. v. Aeronautics Forwarders, Inc.*, 413 N.E.2d 1299, 1315 (Ill. Ct. App. 1980). The Court is skeptical that the breaches alleged could mean that Cary was not otherwise performing her job. Again, as discussed above, the breaches of fiduciary duty that have made it to the Illinois Appellate Court typically involved disloyal employees who set up competing business concerns and effectively deprived their former employers of large sums of

---

1–2 (alleging only access and transmittal of records, communications, and documents). So the Court only addresses the argument about whether Cary could share documents with her counsel, and assumes that she must be permitted to share whatever information she knows.

money. This is not that kind of case. If a breach of duty occurred, then Cary could perhaps be found liable for a narrower form of damages than full return of her salary.[6]

A final word is necessary: if this Opinion seems to deal too much in hypotheticals, it is because Metra has provided precious little information about Cary's alleged breach, and how exactly the breach harmed Metra. It seems likely that if Cary had taken any truly sensitive information, Metra would have alleged those facts—or at least the *nature* of those facts—in its counterclaim. Having said that, Metra was not *required* to do so at the pleading stage. But if discovery reveals that Metra's claim is based on facts that do not add up to a breach of fiduciary duty under the standard set out in this Opinion, then Cary can ask for leave to file an early summary judgment motion to dispose of the counterclaim.

---

[6]Both parties rely heavily on federal district court cases to support their analyses Those cases are most useful when they direct the reader to Illinois Appellate Court cases that discuss the relevant common law principles. Cary correctly points out that *McLaughlin* and another case that Metra cites, *Ortiz v. Metra Commuter Rail*, 2005 WL 8178960 (N.D. Ill. Feb. 18, 2005), are non-binding and distinguishable from the case at hand. R. 154, Pl's. Reply at 6–8. Of the two cases Cary considers "better-reasoned," Pl's. Reply at 8, one helps her, and one does not. In one case, a court in this district declined to force an employee to disgorge her salary in part because the breach "was an isolated incident and not part of an ongoing practice of disloyalty." *United States ex rel. Grandeau vs Cancer Treatment Centers of America*, 2005 WL 300414, *2 (N.D. Ill. Feb. 4, 2005) (citing *ABC Nat'l Transp., Inc. v. Aeronautics Forwarders, Inc.,* 413 N.E. 2d 1299, 1315 (Ill. Ct. App. 1980). That court also noted that the employer was trying to get compensation for a period when the employee was engaging in protected activity—disclosing documents to the government. *Id.* In the other case cited by Cary, *Darchak v. City of Chicago Board of Education*, the request for disgorgement was denied because the employer, a school, did not allege whether the teacher employee had breached her duty before or after she stopped teaching, so the claim was "excessive and fail[ed] to state the required damages element." 2007 WL 9724717, *2 (N.D. Ill. Dec. 7, 2007). There is no such factual deficiency in Metra's counterclaim.

## IV. Conclusion

The motion to dismiss Metra's counterclaim is denied.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 23, 2021

13